# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

v.

LUIS ALBERTO GARIBAY GONZALEZ, and
IDELFONSO NMI GARIBAY.

**CRIMINAL COMPLAINT**

CASE NUMBER: 09-81 M (AEG)

I, Ricardo E. Tijerino, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. Beginning sometime in or about November, 2009 until the present, in the City of Fond du Lac, and in the State and Eastern District of Wisconsin, the above-named individuals did knowingly and intentionally conspire to distribute cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, §§ 841(a)(1), and 846.

I further state that I am a Special Agent for the Wisconsin Department of Justice, Division of Criminal Investigation, and that this complaint is based on the facts contained in the attached affidavit.

Continued on the attached sheet and made a part hereof: ✔ Yes

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

December 14, 2009             at   Milwaukee, Wisconsin
Date                                City and State

AARON E. GOODSTEIN, U.S. Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

# AFFIDAVIT

I, Ricardo E. Tijerino, being duly sworn under oath, state as follows:

1. I am a Special Agent of the Wisconsin Department of Justice, Division of Criminal Investigation - (DCI), Narcotics Bureau. I am currently assigned to the Milwaukee Field Office. I have been so employed since November of 1998. Prior to being employed with Wisconsin Department of Justice, I was a City of Milwaukee Police Officer for approximately 3 years. My duties as a DCI agent include investigating violations of state and federal drug laws (Title 21, United States Code) and related offenses. During the course of my employment, I have participated in investigations involving the distribution of drugs and controlled substances, and investigations involving the laundering of drug proceeds and the concealment of assets purchased with drug proceeds.

2. The information contained in this affidavit is based on my observations and training, my investigation in this case as well as information from other law enforcement officers. However, this affidavit does not contain everything I know about this investigation, or all the information obtained during the course of this investigation. Since this affidavit is being submitted for the limited purpose establishing probable cause as set forth herein, I have not included each and every fact known to me concerning this investigation.

3. This affidavit is made for the purpose of establishing probable cause in support of an arrest warrant for two subjects:

   a. LUIS ALBERTO GARIBAY GONZALEZ, H/M, BORN: 1977, of 2557 South 28th Street, Milwaukee, WI. Hereinafter referred to as: "GONZALEZ."

   b. IDELFONSO NMI GARIBAY, H/M, BORN: 1973 of 1215 South 22nd

. Street, Milwaukee, WI. Hereinafter referred to as: "GARIBAY."

## Background of the Investigation

**Confidential Source Information**

Confidential Source 1

4. In September 2009, law enforcement agents interviewed a confidential source (CS1). CS1 has provided information in this narcotic investigation, which I believe to be useful and reliable. CS1 is cooperating in order to assist CS2, who is facing prosecution on a drug case. The information provided by CS1 has been corroborated by independently obtained evidence, including telephone records and physical surveillance.

5. CS1 stated that an individual from Milwaukee, Wisconsin, who CS1 only knew as "Saul" (later identified as LUIS ALBERTO GARIBAY GONZALEZ) was supplying him/her with large amounts of cocaine. CS1 informed case agents that he/she had been supplied approximately 33 Kilograms of cocaine since 2007 by GONZALEZ. CS1 informed case agents that he/she owed GONZALEZ approximately $27,000 for approximately 33 ounces of cocaine which had been delivered to CS1 by GONZALEZ in the summer of 2009.

6. In early October of 2009, at the direction of case agents, CS1 placed a recorded telephone call to GONZALEZ and arranged for the delivery of $2,000 in U.S. Currency as a partial payment for the aforementioned drug debt.

7. On October 6, 2009 CS1 was provided with pre-recorded funds to make a partial payment on the drug debt, and was outfitted with an audio/video recording device. CS1 was kept under surveillance by law enforcement while he/she met GONZALEZ at 518 Emma Street, Fond du Lac, Wisconsin. After approximately 30 minutes, GONZALEZ exited the aforementioned location. GONZALEZ was observed driving a 2002 Black Jeep Grand Cherokee bearing

Wisconsin registration: 223-PSX. GONZALEZ was accompanied by an UNKNOWN H/M (later identified as IDELFONSO NMI GARIBAY). CS1 was kept under surveillance by law enforcement until he/she met with law enforcement. Case agents searched CS1 for contraband and money, none of which were found. Your affiant has reviewed the recordings (audio & video) obtained during the aforementioned transaction, and your affiant was thereby able to hear CS1 discussing with GONZALEZ the drug debt and the amount of monies still owed by CS1 to GONZALEZ for the approximately 33 ounces of cocaine delivered in the summer of 2009.

8. Shortly after the meeting on October 6, 2009, case agents conducted a traffic stop of the 2002 Black Jeep Grand Cherokee bearing Wisconsin registration: 223-PSX. Case agents identified SAUL LNU as LUIS ALBERTO GARIBAY GONZALEZ, H/M, BORN: 1977 and his associate as: IDELFONSO GARIBAY, H/M, BORN: 1973. With the assistance of the Wisconsin State Patrol, case agents recovered the partial payment of $2,000 given by CS1 to GONZALEZ and GARIBAY for the drug debt of approximately 33 ounces of cocaine. Case agents later compared pre-recorded serial numbers with the monies recovered and found that the serial numbers and denominations were identical.

9. On November 9 and November 11, 2009, at the direction of case agents, CS1 made recorded telephone calls to GONZALEZ at the telephone number of (414) 375-6964 and made arrangements to deliver another partial payment of $1,000 for the drug debt of approximately 33 ounces of cocaine. At the direction of the case agents, CS1 asked GONZALEZ to bring approximately four (4) ounces of cocaine to CS1. Your affiant reviewed the contents of the aforementioned recorded telephone calsl and was thereby able to confirm the conversations between CS1 and GONZALEZ.

10. On November 12, 2009, case agents searched 518 Emma Street, Fond du Lac,

Wisconsin and CS1 for the presence of weapons, drugs and large amounts of money, none of which were found. Case agents fitted the aforementioned location and CS1 with audio/video equipment to record the aforementioned transaction. CS1 was provided with $1,000 of pre-recorded funds to use as partial payment for the drug debt of approximately 33 ounces of cocaine. On November 12, 2009, case agents observed GONZALEZ and GARIBAY arrive at 518 Emma Street, Fond du Lac, WI and enter the aforementioned residence to meet with CS1. CS1 was kept under surveillance by law enforcement while he/she met with GONZALEZ and GARIBAY at the pre-arranged location. After approximately 30 minutes, GONZALEZ and GARIBAY exited CS1's residence. CS1 was kept under surveillance by law enforcement until he/she met with law enforcement. Case agents took possession of a plastic bag containing a white powdery substance and searched CS1 and his/her residence for additional contraband and money, none of which were found. The substance tested was later determined to be approximately 101 grams of cocaine. Your affiant has reviewed the recordings (audio & video) obtained during the aforementioned transaction and has heard CS1 discussing with GONZALEZ the drug debt and the amount of monies still owed by CS1 to GONZALEZ for the approximately 33 ounces of cocaine delivered in the summer of 2009.

11. On November 16, 2009, at the direction of case agents, CS1 placed a recorded telephone call to GONZALEZ at the telephone number of: (414) 375-6964 and arranged for GONZALEZ to meet on November 17th, 2009 and receive payment for the aforementioned 101 grams of cocaine delivered by GONZALEZ and GARIBAY on November 12, 2009. GONZALEZ agreed to meet with CS1 on November 17, 2009.

12. On November 17, 2009, case agents searched CS1 and CS1's residence for the presence of weapons, drugs and large amounts of money, none of which were found. CS1 was

provided with $4,000 in pre-recorded funds to pay for the 101 grams of cocaine delivered by GONZALEZ and GARIBAY on November 12, 200,9 and outfitted CS1 with an audio/video recording device. CS1 was kept under surveillance by law enforcement while GONZALEZ and GARIBAY arrived in the area of the 518 Emma Street, Fond du Lac, WI driving a purple 1996 Chevrolet Suburban bearing Wisconsin registration: 618-KVN. Upon arrival, GONZALEZ and GARIBAY drove away from the area and drove to the Burger King parking lot located at 790 West Johnson Street, Fond Du Lac, WI. GARIBAY exited the vehicle (618-KVN) driven by GONZALEZ and entered the Burger King restaurant. A short time later CS1, at the direction of case agents, placed a telephone call to GONZALEZ at (414) 375-6964. CS1 later reported that GONZALEZ informed CS1 that he was not comfortable meeting at the CS1's residence due to a few strange vehicles in the neighborhood. CS1 agreed to meet with GONZALEZ at 518 Emma Street, Fond du Lac, WI after the CS1 checked things out. A short time later CS1 and GONZALEZ made telephone contact and agreed to meet at 518 Emma Street, Fond du Lac, WI.

13. Case agents observed GONZALEZ drive away from the Burger King lot alone, and arrive at CS1's residence. Upon arrival at the aforementioned location case agents observed GONZALEZ go inside CS1's residence. CS1 later reported that CS1 handed GONZALEZ $4,000 as payment for the 101 grams of cocaine delivered on November 12, 2009 by GONZALEZ and GARIBAY. Then GONZALEZ told CS1 that he wanted to leave and go eat. CS1 agreed to go out to lunch and was observed leaving his/her residence with GONZALEZ. A few moments later, case agents observed GONZALEZ and CS1 enter GONZALEZ's vehicle (618-KVN) and drive to the Burger King. GONZALEZ and CS1 exited the vehicle, and went inside the Burger King restaurant where they met with GARIBAY.

14. Approximately 30 minutes later, GONZALEZ, GARIBAY and CS1 exited the

restaurant and drove back to CS1's residence where they all exited the vehicle (618-KVN) and went inside CS1's house. CS1 later reported that GONZALEZ handed a package (silver in color) to CS1. CS1 stated that while CS1, GARIBAY and GONZALEZ were talking inside the Burger King lot, he/she could overhear GARIBAY telling GONZALEZ that he did not want to do the deal becuse of all of the cars that he had seen in front of the CS1's residence. According to CS1, GARIBAY further commented that GONZALEZ is so persistent about getting money that he does not use good judgment when it comes to selling. According to CS1, GONZALEZ stated that he was okay with things, and thereafter delivered the package to CS1. A short time later, GONZALEZ and GARIBAY exited the CS1's residence and drove away from the area. CS1 was kept under surveillance by law enforcement until he/she met with law enforcement. Officers took possession of a package from CS1 wrapped in silver duct tape containing a white powdery substance and searched CS1 and CS1's residence for additional contraband and money, none of which were found. The substance was later tested and was determined to be approximately 196 grams of cocaine and tested positive for cocaine. Your affiant reviewed the recordings (audio & video) obtained during the aforementioned transaction and heard CS1 discussing with GONZALEZ the drug debt and the amount of monies still owed by CS1 to GONZALEZ, as well as the $4000 payment for the 101 grams delivered on November 12, 2009. During the review of the aforementioned video/audio recording, your affiant clearly observed CS1 handing GONZALEZ the $4,000 in pre-recorded U.S. Currency as payment for the 101 grams of cocaine that were delivered by GONZALEZ on November 12, 2009 to CS1. GONZALEZ can then clearly be heard telling CS1 that he "brought him seven (7)," a reference to the approximately 7 ounces of cocaine that he later delivered after returning from the Burger King. GONZALEZ can also be heard telling CS1 that he and his cousin (GARIBAY) saw what they believed to be police

cars so they left the area.

Confidential Source 2

15. In November 2009, law enforcement agents interviewed a second confidential source (CS2). CS2 has provided information in this narcotic investigation, which I believe to be useful and reliable. CS2 is cooperating in order to obtain consideration in a pending prosecution. The information provided by CS2 has been corroborated by independently obtained evidence, including telephone records and physical surveillance.

16. CS2 stated that he/she was in the drug business with CS1 and they were being supplied by an individual CS2 knew only as "Saul," later identified as GONZALEZ, with large amounts of cocaine. CS2 informed case agents that he/she and his/her partner (CS1) had been supplied approximately 33 Kilograms of cocaine since 2007 by GONZALEZ and his associate (later identified as GARIBAY). CS2 informed case agents that he/she and CS1 owed GONZALEZ approximately $27,000 for approximately 33 ounces of Cocaine which had been delivered in the summer of 2009. CS2 positively identified GONZALEZ as the subject he/she knew as SAUL LNU out of photo array lineup. CS2 also positively identified GARIBAY as GONZALEZ's business associate out of a photo array lineup.

17. On November 19, 2009, CS2 played back a recorded telephone message left by GARIBAY on his/her telephone in English containing the following statements: "Hey man, how are you doing? It's Adam's friend. I heard that you were mad about something. I don't know what your problem is, or what his problem is. But it has been so long. It's been like five (5) weeks, so talk to him. We are going to call him up later on or tomorrow." CS2 stated that the aforementioned recorded telephone message had been left by GARIBAY because neither CS1 nor CS2 had made any (cash) payments on the approximate 33 ounces of cocaine that had been delivered by GONZALEZ and GARIBAY in the summer of 2009 to CS1 and CS2.